[No. 11052. In Bank.—August 28, 1885.]

## EEL RIVER AND EUREKA RAILROAD COMPANY, APPELLANT, v. WATERMAN FIELD, RESPONDENT.

EMINENT DOMAIN—RAILROAD—RIGHT OF WAY.—In a proceeding to condemn land, a railroad corporation, under section 465 of the Civil Code, has power to acquire a right of way in accordance with the most advantageous route for its road; and the taking for such purpose is not rendered unnecessary by the fact that it had previously purchased a less advantageous right of way over the land of the defendant.

APPEAL from a judgment of the Superior Court of Humboldt County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*S. M. Buck,* and *Cope & Boyd,* for Appellant.

*W. H. Brumfield,* for Respondent.

Ross, J. — The plaintiff, a corporation organized under the laws of this State for the purpose of building and operating a railroad from a point on the Van Duzen River to the city of Eureka in Humboldt County, seeks by this proceeding to condemn a right of way for its road over the land of defendant. The answer of defendant put in issue the alleged necessity for taking the land in question, and upon this issue the court below found in favor of defendant, and accordingly gave judgment against the plaintiff. It is contended here that the evidence is insufficient to sustain the finding.

It appears that one R. F. Herrick, at the instance of the plaintiff, made a preliminary survey for the line of its road through that portion of the land of the defendant described as "west of the dyke," and defendant sold to the plaintiff a right of way four rods in width for its road over that part of his land "granting to said company the right to pass and re-pass with its rolling stock, freight, and passenger cars, to construct and maintain side tracks, switches, turn-tables, and warehouses; the said grant of right of way to continue and be in force so long as the said company shall continue to maintain and operate its road and no longer." But the line of the road as finally located ran through another portion of defendant's land, and it is over that portion of the land embraced in the line as finally located that the plaintiff seeks to acquire the right of way by means of these condemnation proceedings. The plaintiff's engineer testified at the trial that "it was necessary to locate the line as described in the complaint herein across the defendant's land because it is the best line, the most economical to construct, and the most practicable route for running a line through that land. It is the shortest line; it has less curvature than any other line, and the road being a very important one (may be a through line) it is necessary to consider very carefully the best line to be run through defendant's land."

The engineer who ran the preliminary line testified: "The difference between the line described in the complaint and the

one I surveyed consisted in this: The one I surveyed west of the dyke was of greater length, had a very short curve; there may be considerable difference in cost of two routes, as the line in the complaint described is high enough to avoid the necessity of throwing up an embankment. I could not say what the difference in cost would be. The route they have located is the shortest, still the other route would accommodate their business, and it looks to me better than the one they seek now. It is nearer their landing."

The testimony of the witness F. E. Herrick is of but little consequence, as he admitted that he had made no survey of the routes, but that his examination was confined to the map, and his experience in railroad building was confined to two logging roads—one a quarter of a mile and the other one mile in length.

The basis of the action of the court below in finding that the land in question was not necessary to be taken for the purposes of the road was the fact that the plaintiff had previously acquired, and still held by purchase, a right of way across defendant's land west of the dyke, "which will enable the plaintiff to accomplish the object for which it is incorporated, and discharge every duty it owes to the public."

By section 465 of the Civil Code it is declared that:—

"Every railroad corporation has power:—

"1. To cause such examination and surveys to be made as may be necessary to the selection of the most advantageous route for the railroad; and for such purposes their officers, agents, and employees may enter upon the lands or waters of any person subject to liability for all damages which they do thereto. . . . .

"4. To lay out its road, not exceeding nine rods wide, and to construct and maintain the same, with a single or double track, and with such appendages and adjuncts as may be necessary for the convenient use of the same. . . . .

"7. To purchase lands . . . . to be used in the construction and maintenance of its road, and all necessary appendages and adjuncts, or acquire them in the manner provided in title 7, part 3, of the Code of Civil Procedure, for the condemnation of lands; and to change the line of its road, in whole or in part, whenever a majority of the directors so determine, as provided hereinafter; but no such change must vary the

general route of such road, as contemplated in its articles of incorporation. . . . ."

The next section provides:—

" Every railroad corporation in this State must, within a reasonable time after its road is finally located, cause to be made a map and profile thereof, and of the land required for the use thereof, and the boundaries of the several counties through which the road may run, and file the same in the office of the secretary of State," etc.

By section 467 it is provided: ."If at any time after the location of the line of the railroad and the filing of the maps and profiles thereof, as provided in the preceding section, it appears that the location can be improved, the directors may, as provided in subdivision 7, section 465, alter or change the same, and cause new maps and profiles to be filed, showing such changes, in the same offices where the originals are on file, and may proceed, in the same manner as the original location was acquired, to acquire and take possession of such new line, and must sell or relinquish the lands owned by them for the original location within five years after such change. No new location as herein provided must be so run as to avoid any points named in their articles of incorporation."

It will be observed that by the provisions of the last section that even after the line is once finally located and the map filed as required by section 466, if it appears that the location can be improved the directors may, in accordance with the provisions cited, alter or change the route, and may proceed in the same manner as the original location was acquired, to acquire and take possession of such new line, being required to sell or relinquish the lands owned by them for the original location, within five years after such change. But here the effort is to condemn land embraced within the line as first finally located and as shown by the map filed by the plaintiff in accordance with the provisions of section 466 of the Civil Code. There is no substantial conflict in the evidence upon the proposition that the line as finally located and within which the land sought to be taken falls, is the shortest, best, and most economical, and therefore the most practicable route. The mere fact that the plaintiff had, after its preliminary survey, acquired a right of

way over another portion of defendant's land over which it might, though at less advantage, build its road, does not render the taking unnecessary; for, as has been seen, railroads are, under our statute, empowered to alter or change their route even when once finally located, whenever the location can be improved. In the present case the right of way granted the plaintiff by defendant was conditional, and by the terms of the deed will cease to exist when plaintiff's road is constructed elsewhere.

We are of opinion that the evidence is insufficient to sustain the finding of the court below.

Judgment and order reversed and cause remanded for a new trial.

MORRISON, C. J., MYRICK, J., THORNTON, J., McKEE, J., and McKINSTRY, J., concurred.